IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL ACTION |
| v. : | |
| : | NO. 09-0452 |
| KHALIET WASHINGTON : | |

**SURRICK, J.**                                                                                                                               **FEBRUARY 5, 2010**

## MEMORANDUM

On January 23, 2009, Philadelphia police officers arrested Defendant Khaliet Washington ("Defendant") and charged him with possession of a firearm by a convicted felon. Defendant has filed a Motion to Suppress the firearm that was discovered during his encounter with the police. (Doc. No. 17.) Defendant contends that his arrest and the seizure of the firearm violated his Fourth Amendment rights. A suppression hearing was held on January 27 and January 29, 2010, at which the Government offered the testimony of the arresting officer, Robert McCarthy. Defendant offered the testimony of a witness, Diane Milner. Based upon the evidence and testimony presented at the hearing, Defendant's Motion to Suppress will be denied.

**I. FINDINGS OF FACT**

On the evening of January 23, 2009, Officer McCarthy and his partner, Officer Michael Hand, were on patrol. (Hr'g Tr. 4–5, Jan. 27, 2010.) They were in uniform and driving a marked police vehicle. At about 7:40 p.m., they were driving northbound in the 2000 block of Marshall Street, which is a high-crime area. (*Id.* at 5, 10.) The two officers were patrolling in that particular neighborhood because there had been a shooting there the day before. (*Id.* at 7.) As the officers approached the intersection of Marshall and West Diamond Streets, Officer

McCarthy observed Defendant and two other men standing on the southwest corner of Marshall and West Diamond. He did not see any other people on the street. (*Id.* at 5, 13–14.) Officer McCarthy and Defendant made eye contact, and Defendant immediately put his hand on his "right waistband," turned, and began to walk westbound on West Diamond. The other two men remained on the corner. (*Id.* at 6.) Officer McCarthy turned his car onto West Diamond, got out of the vehicle with his hand on his holster, and advised Defendant to stop. Defendant turned around and said, "Who me?" to which Officer McCarthy replied, "Yes you." (*Id.* at 7, 16.) Upon hearing Officer McCarthy's reply, Defendant reached into his waistband, pulled out a gun, and started to run westbound on West Diamond. (*Id.* at 7.) Officer McCarthy drew his weapon and ran after Defendant.

The ensuing foot pursuit was short. Defendant ran into a vacant lot, tripped over a fence, fell to the ground, and dropped his gun. Officer McCarthy had his gun pointed at Defendant as he witnessed these events. While Defendant was still on the ground, Officer Hand approached him and attempted to handcuff him. Defendant resisted, flailing his arms about, but he was eventually handcuffed. Officer McCarthy recovered the fully loaded handgun—a silver and black, nine millimeter Smith and Wesson—approximately two or three feet from where Defendant fell. (*Id.* at 9; Gov't Ex. 1.)

Defendant offered the testimony of Diane Milner. Milner testified that she was on her front porch on the night Defendant was arrested and that she saw a portion of Defendant's interaction with the police. (Hr'g Tr. 6–7, Jan. 29, 2010.) She testified that there were two groups of men on West Diamond Street that night, one group of three, which Defendant was part of, and another group of five. (*Id.* at 7.) In addition, Milner testified that she did not see

2

Defendant touch his waistband or pull a gun. (*Id.* at 11, 16.) Milner further testified that she did not see Defendant trip and fall in the lot. Rather the police caught Defendant, threw him to the ground and handcuffed him. After Defendant was handcuffed, Milner asked the police why Defendant was arrested and they told her that Defendant had a gun.

Defendant is a friend of Milner's nephew. On the night of this incident Defendant had come to Milner's home to visit her nephew. Milner testified that she was in a position to see the events of this evening because her nephew and Defendant had been in front of her house talking and, after her nephew returned to the house, and she was standing outside the front door when the police came onto Diamond Street.

Officer McCarthy was a credible witness. His demeanor was calm and composed, and he had a clear recollection of the events of this evening. His testimony was straightforward and was not shaken on cross examination. Diane Milner was less credible. Her testimony seemed confused at times and was less than compelling. She has a criminal record and, on the day of the hearing, she was brought to the Federal Courthouse from the Philadelphia Prison system where she is presently incarcerated. Defendant is a friend of her nephew and was in fact visiting her nephew at her house on the night in question. She testified that she saw this incident because she just happened to be standing outside her front door on this night in January of 2009, after her nephew had finished talking to Defendant and had gone back inside her house. When asked why she would be standing outside on a night in late January she responded, "because sometimes I just do that, just stand at the door." (*Id.* at 17.)

## II. DISCUSSION

Defendant argues that when the officers turned their patrol car from Marshall onto West

Diamond, there was no indication that he had done anything wrong. (Hr'g Tr. 20, Jan. 29, 2010.) Defendant argues that when Officer McCarthy exited his vehicle with his hand on his holster and instructed Defendant to stop, there "was effectively a show of authority, and at that point, [Defendant] was effectively under arrest." (*Id.* at 21–22.) Defendant contends that he was under arrest as soon as Officer McCarthy told him to stop and that since Officer McCarthy had no probable cause to arrest him, all the evidence seized as a result of the arrest—namely the gun—should be suppressed as the fruit of the poisonous tree under *Wong Sun v. United States*, 371 U.S. 471 (1963). (*See* Doc. No. 17 at unnumbered 4.) The Government argues that Defendant is simply wrong as a matter of law. We agree.

In order for there to be a seizure for purposes of the Fourth Amendment, there must be either the application of physical force *or* a submission to police authority. *California v. Hodari D.*, 499 U.S. 621, 626 (1991); *United States v. Smith*, 575 F.3d 308, 313 (3d Cir. 2009); *United States v. Colon*, 654 F. Supp. 2d 326, 331 (E.D. Pa. 2009). There was no application of physical force here. The officers did not lay hands on Defendant until after he began to flee. S*ee Hodari D.*, 499 U.S. at 624 (observing that "the mere grasping or application of physical force with lawful authority, whether or not it succeed[s] in subduing the arrestee, [is] sufficient" to constitute a seizure of the person). Therefore a submission to a show of authority is the only basis upon which Defendant can establish that he was wrongfully seized. However, even if we assume that Officer McCarthy's instruction to Defendant to stop was a show of police authority, there clearly was no submission. Defendant immediately took off. There was no seizure of Defendant at that time. Defendant was seized after he pulled the gun during the chase. At that point the police had probable cause to arrest him.

The cases that are instructive on this point are legion. We will, nevertheless, limit our discussion to two cases that control the outcome here. In *United States v. Hodari D.*, the defendant was part of a group that was huddled around a parked car. When the defendant saw a police patrol approach, he fled. The police chased him. During the chase, the defendant discarded a rock of crack cocaine. The state court of appeals held that the evidence of the crack should have been suppressed. The state supreme court denied review. On certiorari, the Supreme Court of the United States framed the issue as the "narrow question . . . [of] whether, with respect to a show of authority . . . , a seizure occurs even though the subject does not yield." *Hodari D.*, 499 U.S. at 626. Concluding that "a policeman yelling 'Stop, in the name of the law!' at a fleeing form that continues to flee . . . . is no seizure," the Court held that no Fourth Amendment violation had occurred. *Id.* It reached this conclusion notwithstanding the state's concession that the arresting officers did not have reasonable suspicion to stop the defendant under *Terry v. Ohio*, 364 U.S. 253 (1960). *Hodari D.*, 499 U.S. at 623 n.1.[1]

In *United States v. Smith*, an officer leaned outside of his patrol car window and asked the defendant if he could talk with him. 575 F.3d at 311. The defendant stopped, and the officer asked him where he was going. The defendant replied that he was on his way to his girlfriend's house. When the officer asked him where that was, the defendant repeated that he was going to

---

[1] A *Terry* reasonable suspicion analysis is not necessary here. We note, however, that the Government took the position at the hearing that Officer McCarthy in fact had reasonable suspicion to stop Defendant. The Government noted that there was eye contact between Defendant and Officer McCarthy, after which Defendant started to walk away from the officers. As he walked away he clutched his waistband. The incident took place in a high crime area where they had been a shooting the night before. The Government argued that it was reasonable for Officer McCarthy to suspect that Defendant acted as he did because he had contraband, either drugs or a gun, in his waistband and that this suspicion was in fact confirmed as Defendant took off running and pulled a gun from his waistband.

5

his girlfriend's house.  The officer and the defendant repeated this exchange several times, with the defendant continuing to give the same answer.  Becoming suspicious, the officer asked the defendant to place his hands on the hood of the patrol car.  The defendant took two steps toward the car, but as soon as the officer and his partner opened their doors, he took off running.  The officers chased after the defendant and observed a gun fall from the defendant's waistband as he climbed a fence.  The Third Circuit concluded that the gun should not be suppressed because the defendant's two steps toward the car did not constitute submission to the officers' show of authority.  *Id.* at 316.

Here, Officer McCarthy's act of approaching Defendant and attempting to engage him in conversation did not constitute a seizure.  As the court in *Smith* recognized, "a law enforcement officer's approaching a person and asking him questions on the street does not, without more, effectuate a seizure."  *Id.* at 313 (citing *United States v. Lockett*, 406 F.3d 207, 211 (3d Cir. 2005)).  Officer McCarthy may have wished, for example, to ask Defendant and his friends if they knew anything about the previous night's shooting.  Of course, Defendant and his friends were not obligated to respond.  However, when Officer McCarthy instructed Defendant to stop, he started to run.  (*See* Hr'g Tr. 11, 16, Jan. 29, 2010.)  *Hodari D.* and *Smith* make it clear that when a person runs away in response to a police inquiry, even one instigated without reasonable suspicion, there is no seizure.  Moreover, unlike the facts in *Smith*, there is no evidence here that Defendant made any attempt to comply with Officer McCarthy's request.  Thus, it is beyond dispute that Defendant did not submit, and Defendant is simply wrong when he asserts that Officer McCarthy's instruction to stop constituted an arrest.

Once Defendant, who was in a high crime area in Philadelphia, pulled out the gun and

6

started running, the officers had probable cause to arrest him. Defendant's situation is similar to the defendants in *Hodari D.*, and *Smith*, whose attempts to evade the police resulted in the disclosure of evidence that gave rise to probable cause. If anything, Defendant's case is more clear-cut because he pulled out the gun when he started to run. Since the police did nothing to violate Defendant's constitutional rights, his motion must be denied.

**III.    CONCLUSIONS OF LAW**

       1.    Defendant's constitutional rights were not violated.

       2.    The police had probable cause to arrest Defendant.

       3.    The seizure of the fully loaded Smith and Wesson 9mm handgun was proper.

       4.    Defendant's Motion To Suppress Physical Evidence is without merit.

An appropriate Order follows.

BY THE COURT:


/s/ *R. Barclay Surrick*
U.S. District Judge